## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

CHERYL ANN GARTNER,                          Civil No. 06-1383 (JRT/JSM)

Plaintiff,

v.                                           **ORDER ADOPTING REPORT
                                             AND RECOMMENDATION OF
MICHAEL J. ASTRUE,                           MAGISTRATE JUGDE**
Commissioner of Social Security,

Defendant.

Fay E. Fishman, **PETERSON & FISHMAN**, 3009 Holmes Avenue South, Minneapolis, MN 55408, for plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

Plaintiff Cheryl Ann Gartner is suing the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's denial of her application for disability insurance benefits. Both parties moved for summary judgment, and United States Magistrate Judge Janie S. Mayeron issued a Report and Recommendation granting the motion of the Commissioner. Plaintiff filed objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.2(b), and the Court reviews those objections *de novo*. After a careful review of the record, the Court finds that the Commissioner's decision conforms to the law and is supported by substantial evidence from the record as a whole, as required by 42 U.S.C.

§ 405(g).  Therefore, the Court overrules plaintiff's objections and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits on October 11, 2001, alleging that she had been unable to work since June 29, 2000, because of arthritis in her knees, neck, back, and hands, and depression.  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 27, 2002, before ALJ James D. Geyer. After the hearing, the ALJ denied plaintiff's application in a decision issued November 27, 2002.  Plaintiff then requested review from the Commissioner's Appeals Council.  The Appeals Council was unable to locate the hearing tape, and in a decision issued February 12, 2005, remanded the case to the ALJ with instructions to supplement the record.  A second hearing was held before ALJ Geyer on May 20, 2005, and included testimony from the plaintiff and an impartial Vocational Expert ("VE").  The ALJ again denied plaintiff's application in a decision issued August 25, 2005.  The Appeals Council denied her request for review on February 23, 2006, making the ALJ's decision the final decision of the Commissioner in this case.  *See* 20 C.F.R. § 404.981.

Plaintiff was born on January 14, 1957, and was 48 years old on the date of the ALJ's decision.  She has a general equivalency diploma, and past work experience as a caregiver, custodian, food preparer, baby-sitter, caretaker and recorder.  In June 2000, plaintiff underwent knee surgery.  Plaintiff's surgery marked the beginning of several

years of health problems, and varied attempts to control those problems under the care of multiple physicians. Those problems were described at length in the thorough Report and Recommendation filed by the Magistrate Judge, and are reproduced below only to the extent necessary to resolve plaintiff's objections.

In determining whether plaintiff is disabled, and entitled to disability benefits, the ALJ followed the five-step analysis codified at 20 C.F.R. § 404.1520. First, the ALJ determined that plaintiff has not engaged in substantial gainful activity since January 1, 2001. In steps two and three, the ALJ found the plaintiff suffered from several "severe" impairments – degenerative disc disease of the cervical and lumbosacral spine, fibromyalgia, osteoarthritis of the hands and right knee, and a depressive disorder – but that none of these impairments meet or equal impairments listed in the regulations. In the fourth step, the ALJ determined that plaintiff does not have the residual functional capacity ("RFC") to perform any of her past relevant work. Finally, in the fifth step, the ALJ determined that plaintiff can perform other jobs that exist in significant numbers in the national economy, including bench work assembly positions and other inspecting, grading, or sorting positions done at a workbench or table. (R. 34). Accordingly, the ALJ found that plaintiff was not disabled, and it is the ALJ's determination at this fifth step that is the focus of this action.

## ANALYSIS

## I.     MAGISTRATE JUDGE'S FINDINGS AND PLAINTIFF'S OBJECTIONS

The Magistrate Judge recommended that the Court uphold the ALJ's decision, rejecting plaintiff's arguments that the ALJ had failed to (1) comply with a remand order from the Appeals Council; (2) give proper weight to plaintiff's treating physicians; (3) give proper weight to plaintiff's subjective complaints; and (4) present an adequate hypothetical question to the VE.  Plaintiff renews those arguments here, and the Court addresses them separately below.

## II.    COMPLIANCE WITH THE APPEALS COUNCIL REMAND ORDER

Gartner first argues that the ALJ failed to comply with instructions included in the remand order issued by the Appeals Council on February 12, 2005.  Even if the Court were to conclude this is true, however, if the ALJ's decision conforms to the law and is supported by substantial evidence, the Court sees no ground for reversing merely because the ALJ did not obey the Appeals Council.  A claimant who thinks that an ALJ's decision does not follow remand instructions can always appeal right back to the Appeals Council, as the plaintiff did here.  That process gives the Appeals Council an opportunity to order a second remand if its instructions were not followed, and ensures that a benefits decision will not reach federal court until the Appeals Council is satisfied.  Thus, this Court's review is limited to the merits of the final decision of the Commissioner, which the Court turns to below.

**III.     STANDARD OF REVIEW**

The Court may reject the ALJ's decision only if it is not supported by substantial evidence on the record as a whole.  *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007); 42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance, but enough for a reasonable mind to find it adequate to support the decision.  *England*, 490 F.3d at 1019.  Even if the Court might have weighed the evidence differently, it may not reverse the decision when there is enough evidence in the record to support either outcome.  *Id.*

**IV.     SUBSTANTIAL EVIDENCE OF PLAINTIFF'S RFC**

Plaintiff's remaining objections concern the ALJ's finding that she retains the RFC to perform a significant range of sedentary work.  In reaching that conclusion, the ALJ considered plaintiff's extensive medical records, and the medical opinions of Dr. Vern Erickson, Dr. Ayesha Ebrahim, Dr. Harry G. Miller, licensed psychologist Joel T.G. Kirchner, Dr. David L. Wiest, Dr. James Lessard, Dr. Glenn R. Johnson, and Dr. S. Ross Mangiamele.  The ALJ considered questionnaires filled out by the plaintiff describing her ability to perform daily life activities, as well as plaintiff's hearing testimony.   The ALJ also considered the hearing testimony of a Vocational Expert ("VE").

The ALJ placed significant weight on the opinions of Dr. Wiest and Dr. Lessard, who both had lengthy treating relationships with the plaintiff, and specialties relating to her knee and arthritis, respectively.  *See* 20 C.F.R. § 404.1527(d) (noting a treatment relationship and specialization as factors to be considered in evaluating medical

opinions).  Those doctors both indicated that plaintiff's physical ailments would create

limitations in her ability to work but did not preclude a range of sedentary work activities.

Dr. Lessard specifically indicated the following restrictions in April 2003:

> She is not to stand, walk, or run for a period of greater than 15 minutes
> without a similar resting time.  She should not carry, lift, push, or pull any
> object heavier than 10 pounds, once, twice, or many.  She should refrain, if
> at all possible, from walking stairs or ladders, etc.  She should also refrain
> from any activity requiring her to squat down on her haunches or crawl
> down on her knees, etc., totally.  She may sit indefinitely, use her upper
> extremities, from what I can tell today, indefinitely without restrictions.

(R. 352-53).[1]  The ALJ noted that further reports from Dr. Lessard in 2003 suggested

improvement in plaintiff's symptoms, and success in controlling pain through over-the-

counter medications.

The ALJ also relied on the May 2005 evaluations of Dr. Johnson and

Dr. Mangiamele, who both treated the plaintiff after a partial knee replacement in March

2005.  Dr. Johnson noted her "significant improvement" following surgery, and added

"her pain level was described as almost zero."  (R. 28).  Dr. Mangiamele evaluated

plaintiff's capacities in response to her complaints about back pain, and offered a

thorough cataloging of those capacities that did not preclude plaintiff from working.  The

ALJ also found the plaintiff's explanation of the extent of her pain and limitations not to

be credible, for reasons detailed below.  Finally, the ALJ relied on the testimony of a VE

---

[1] The Code of Federal Regulations defines sedentary work as follows: 'Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

in determining that sufficient work was compatible with the limitations supported by the record.

*Dr. Lessard*.   Plaintiff raises several challenges to the ALJ's weighting of the available medical opinions.   Plaintiff first argues that one of the restrictions suggested by Dr. Lessard is ambiguous, and that the ALJ should have sought clarification.   The particular passage plaintiff challenges states that she "is not to stand, walk or run for a period of greater than 15 minutes without a similar resting time."  (R. 352-53).  The VE who testified at plaintiff's hearing suggested that if by "resting" Dr. Lessard meant not working at all, Gartner's restrictions would not be tolerated by an employer.   The VE added, however, that if the type of "resting" referred to by Dr. Lessard is consistent with work performed while sitting, employment would be available.

An ALJ's hypothetical question to a VE is only required to incorporate impairments "that the ALJ finds are substantially supported by the record as a whole." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quotation omitted).  Here, the ALJ responded to the VE's concern about ambiguity by asking about the more permissive reading of Dr. Lessard's restrictions.  (R. 517).  Then, in his written decision, the ALJ indicated that Dr. Lessard's opinion, read alongside the opinion of Dr. Wiest and Dr. Lessard's broader analysis of the plaintiff's condition, was consistent with a capacity for sedentary work activity.  (R. 27).  The Court reads this as an indication that the ALJ believed that the more permissive reading of Dr. Lessard's limitation was supported by the record, and appropriately clarified his question to reflect that view.   There was substantial evidence in the record to support this clarification, in the form of the opinion

of Dr. Wiest; the records relating to her further visits with Dr. Lessard; and the accounts of Dr. Johnson and Dr. Mangiamele.

*Dr. Erickson*.   Plaintiff next challenges the ALJ's failure to place significant weight on the opinion letters of Dr. Erickson.  On May 20, 2002, Dr. Erickson addressed a letter "To Whom It May Concern," suggesting that plaintiff's condition was limiting her ability to obtain meaningful employment, and recommending that she be placed on disability.  Dr. Erickson's letter stated that plaintiff's "joint disease involves both knees, right hip, and arthritis involv[es] both hands, particularly the left hand."  (R. 284).

While the opinion of a treating physician is generally entitled to substantial weight, *Burress v. Apfel*, 141 F.3d 875, 880 (8th Cir. 1998), it is just one of many factors that ALJs are required to consider in evaluating medical evidence.  The other factors include the evidence cited by the physician in support of his or her opinion, the consistency of that opinion with the record as a whole, and whether the physician is a specialist.  *See* 20 C.F.R. § 404.1527(d).  In short, "[t]he opinion of a treating physician can be discounted if other assessments are supported by better or more thorough medical evidence."  *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997).

The ALJ rejected Dr. Erickson's letter, partly because at the time it was written no medical evidence demonstrated the described problems with plaintiff's right knee, right hip, or hands.  (R. 25).  While plaintiff provides a number of citations to the record purporting to show there *was* such support, the Court's review of those citations has failed to uncover anything referencing the specific conditions mentioned in Dr. Erickson's letter.  Moreover, the ALJ indicated that he was rejecting the opinions of

Dr. Erickson and Dr. Ebrahim for a variety of additional reasons, including the fact that Dr. Erickson had seen the patient on only one prior occasion, approximately eight months before he issued his opinion, and appeared to base his opinion primarily on the subjective complaints of the plaintiff, rather than on a physical examination.  (R. 25).  In those circumstances, the ALJ was justified in affording Dr. Erickson's opinion less weight than contrary opinions discussed above.

*Dr. Kirchner*.  Plaintiff also contends that the ALJ improperly discounted Dr. Kirchner's opinion about work restrictions arising from plaintiff's psychological issues.  Dr. Kirchner indicated that the plaintiff "probably does not have the capacity to work independently," and "probably could not carry out work-like tasks with reasonable persistence or pace," because of the interaction between plaintiff's emotional problems and physical problems.  (R. 381).  The ALJ discounted this opinion, in part because any assessment of plaintiff's physical problems was outside of Dr. Kirchner's area of expertise, psychology.  Plaintiff contends that this was improper because Dr. Kirchner's analysis was based on the interplay between plaintiff's psychological and physical characteristics, rather than on her physical characteristics alone.

The Court agrees with the Magistrate Judge, however, that the discounting of Dr. Kirchner's testimony was not improper.  Whether physical characteristics were the sole basis for Dr. Kirchner's opinion or not, they clearly played a role, for Dr. Kirchner indicated that plaintiff's depression was in partial to full remission and provided no indication that mental concerns alone would require work restrictions.  As the ALJ indicated, any restrictions that resulted from the additional consideration of plaintiff's

physical issues was handicapped by Dr. Kirchner's lack of expertise in those areas, *see* 20 C.F.R. § 404.1527(d)(5), as well as by his reliance on plaintiff's subjective complaints in assessing her physical ailments.   Consequently, the ALJ was justified in discounting Dr. Kirchner's opinion as well.

*Additional Medical Evidence Arguments*.  Plaintiff raises two additional arguments challenging the medical evidence used by the ALJ.   Plaintiff first argues that the Magistrate Judge overstates the significance of evidence indicating plaintiff recovered well from her March 2005 left knee replacement.  Plaintiff does not contest the multiple medical opinions suggesting her left knee symptoms improved significantly following the surgery, but argues that those assessments do not support any findings about her condition *before* the surgery.   There is no indication, however, that the ALJ (or the Magistrate Judge) relied on those March 2005 accounts in determining her condition before her knee replacement.    As indicated above, the record contained ample, contemporaneous evidence of her ability before those dates, and that evidence was referred to throughout the opinions of both the ALJ and the Magistrate Judge.

Plaintiff next contends that the Magistrate Judge overstated her ability to perform household activities and other adult living activities at the time of her hearing.   The Magistrate Judge, referring to several "Activities of Daily Living Questionnaires," stated

> ". . . plaintiff reported a level of daily activity consistent with a range of sedentary work.  Plaintiff reported that much of her day was spent doing household chores, albeit with tasks taking longer than in the past, and that she was able to fulfill most adult living responsibilities without assistance.

Report & Recommendation, at *45.  Plaintiff argues that her questionnaires instead indicate that she performed "activities in short spurts, at a slow  pace and required rest between activities."  Plaintiff's Objections to Report and Recommendation of Magistrate, at *6.  The Court fails to see how this discrepancy is significant enough to undermine the Magistrate Judge's conclusion, particularly against the background of the substantial evidence described above.

### A.    Credibility Determination

Plaintiff next argues that the ALJ improperly determined she was not credible to the extent that she claimed her condition foreclosed even sedentary work.  An ALJ may not reject a claimant's subjective complaints merely because of an absence of objective medical evidence.  *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007).  "But an ALJ may take the claimant's medical records into account when determining his or her credibility, and may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole."  *Id.*  In making this determination, the ALJ must consider

> the claimaint's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.  the claimant's daily activities;
> 2.   the duration, frequency and intensity of the pain;
> 3.  precipitating and aggravating factors;
> 4.  dosage, effectiveness and side effects of medication;
> 5.  functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). If an ALJ explicitly discredits a plaintiff's testimony and provides a reasonable justification for doing so, the Court will ordinarily defer to the ALJ's finding. *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991).

Here, the ALJ agreed that plaintiff's condition limited likely her activities and caused her pain, but found her subjective allegations of complete disability to be inconsistent with the record as a whole. In support of this finding, the ALJ detailed numerous examples of inconsistencies between plaintiff's allegations and her reports of her symptoms and activities since 2000. The ALJ noted that plaintiff's earlier part-time work and prolonged caregiver duties reflected a much greater capacity for work activities than plaintiff had acknowledged. The ALJ noted that plaintiff's allegation that she is unable to work in any job is questionable in light of the fact that she had never attempted sedentary work, or sought the help of Vocal Rehabilitation to do so. The ALJ noted that plaintiff's attempts to apply for jobs in several grocery stores suggested her belief that she was able to work in some capacity. And most importantly, the ALJ listed numerous instances in which plaintiff's alleged limitations were inconsistent with her reports to her physicians, and with other evidence in her medical records. This review of the record noted evidence of plaintiff performing a broad array of household tasks; hunting and cherry picking;[2] her noncompliance with medical advice designed to improve her

---

[2] Even if the plaintiff engages in a limited form of these activities, as she suggests, her participation is still suggestive as to her ability to perform sedentary work activities.

condition; and various instances in which she reported improvement inconsistent with an total inability to work.

Plaintiff concedes that the ALJ addressed some of the *Polaski* factors, but argues that the ALJ applied these factors to "snapshots of time," rather than the record as a whole, and challenges the ALJ's analysis of a series of particular facts.  As indicated above, however, it is not the Court's task to evaluate the ALJ's determination in the first instance.  Where the ALJ applies the factors outlined in *Polaski* and makes a credibility finding supported by substantial evidence, the Court must accept the ALJ's determination.  *See Russell*, 950 F.2d at 545.  After a careful review of the record, the Court finds that the ALJ's exhaustive analysis of the medical evidence in this case provided such evidence.

### B.     Hypothetical Posed to the VE

Finally, plaintiff argues that the hypothetical posed to the VE was inadequate because it failed to incorporate all of her limitations.  "Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence."  *Roe*, 92 F.3d at 675.  "The ALJ's hypothetical question needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Id*. (quotation omitted).  Here, plaintiff notes that the hypothetical posed to the VE improperly excluded her mental health limitations.  As indicated above, however, the Court agrees with the Magistrate Judge's opinion that the ALJ had a reasonable basis for excluding the

limitations suggested by Dr. Kirchner.   Accordingly, the ALJ was justified in not including those limitations in the hypothetical posed to the VE.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 26] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 25].   **IT IS HEREBY ORDERED** that:

1.   Defendant's Motion for Summary Judgment [Docket No. 20] is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment [Docket No. 16] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   September 28, 2007                    _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                United States District Judge